# B. E. MILLER *v.* William R. DYER

5-4425                                                423 S. W. 2d 275

## Opinion delivered January 29, 1968

*Henry & Boyett,* for appellant.

*Troy Wiley,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal involves the question whether a lessee in possession of a motor vehicle is liable for damages thereto by reason of a collision not due to fault or carelessness on his part. The trial court rendered judgment in favor of the lessor in the sum of $650.00 for such damages.

Appellee leased a 1957 GMC truck to appellant by written lease. The lease contains the following pertinent sentences:

> "Lessee agrees to keep in full force and effect the liability, collision and comprehensive insurance which is now in effect, on said vehicles. Lessee agrees to take good care of the property above described, and to surrender the same at the expiration of the term of this lease in good condition."

Both parties were engaged in the business of operating riding devices at out-of-doors shows over several states. The truck was returned to appellee at the termination of the lease in its damaged condition. He instituted this action to recover the difference between the value of the truck at the time of the lease and its value when returned.

Appellee had carried *comprehensive* insurance covering his trucks, but it was automatically terminated when the vehicles were parked for the off season, as this one was when the lease was executed. Appellee admits that there was *no* insurance on the truck at that time, unless appellant had taken it out. Appellee stated that he was sure that appellant had *comprehensive* insurance on the truck in force at the time of the collision and claimed to have seen the policy. He did not read the policy, however, and could only say that "it must have been the right kind of policy."

The trial judge cut off further evidence along this line, stating that he construed the contract to mean that

appellant was required by the terms of the contract to carry *comprehensive* insurance of the type appellee had carried in the past, and that the fact that the insurance was not effective during the time the vehicle was stored on the lot during the off season was immaterial.

The court's ultimate findings were incorporated in its judgment and included the following:

> "The defendant breached the terms of the written lease between the parties by his failure to return the 1957 Chevrolet tractor in a good condition and by his failure to carry collision and comprehensive insurance; the plaintiff has suffered damages in the amount of $650.00."

Appellant relies on three points for reversal. They are:

> "I. The court erred as a matter of law in construing the contract to require appellant unequivocably to carry collision and comprehensive insurance on the leased vehicle.
>
> II. Defendant was a bailee for hire and only liable to the plaintiff if his negligence proximately caused the damage to the leased property.
>
> III. Assuming ambiguity in the lease there is no substantial evidence to support the judgment of the court."

We treat two of these grounds jointly, after which we will discuss the other.

## I. and III.

We agree with appellant that the court's construction of the contract is erroneous. The contract called on appellant to "keep in full force and effect the liability, collision and comprehensive insurance" which

was then *"in effect"* [Emphasis ours.] We find no evidence that any *collision* insurance was ever carried on the vehicle. Appellant testified that neither he nor Dyer ever carried any collision insurance. This was the only testimony about *collision* insurance. Comprehensive insurance affords coverage of all property damage to motor vehicles, *exclusive* of collision losses. 5 Appleman, Insurance Law & Practice, § 3222, p. 375. This distinction is recognized in the lease contract by the specific reference to both collision and comprehensive insurance. This court has said many times that words in a contract must be given their obvious meaning. *Ramsay* v. *Roberts,* 240 Ark. 943, 403 S. W. 2d 57. It has also been said that where parties make a contract in clear and unambiguous language, it is the duty of the courts to construe it according to the plain meaning of the language employed. *Roth* v. *Prewitt,* 225 Ark. 466, 283 S. W. 2d 155. When we give the words in the contract their plain and obvious meaning, this clause only required appellant to carry such liability, collision and comprehensive insurance as was *then in effect.* Appellee argues that the clause is thus deprived of any meaning. The lease covered 18 trucks and 11 trailers, and we do not know what type of insurance covering the other vehicles was in effect at the time of the lease. Appellant testified, however, that fleet liability insurance protecting both parties was in effect at the time of the lease. Consequently, the clause would not necessarily be nullified by our construction. If we should say that these words required appellant to carry collision insurance, regardless of whether such insurance was in effect on the date the lease was executed, then we would necessarily read the words "which is now in effect" out of the contract. In view of the fact that there is no evidence that collision insurance was carried on this vehicle, the trial court was in error on this point.

## II.

As a bailee of the truck, appellant was not an insurer, but was held only to ordinary care and diligence

in the absence of any contractual liability. *Bigger* v. *Acree*, 87 Ark. 318, 112 S. W. 879; *Bertig Bros.* v. *Norman*, 101 Ark. 75, 141 S. W. 201; *Turner* v. *Weitzel*, 136 Ark. 503, 207 S. W. 39. The court found, however, that defendant breached the contract requirement that appellant surrender the truck at the expiration of the term of the lease *in good condition*. While appellee does not make any argument or cite any authority supporting the court's judgment on this basis, we cannot reverse the trial court if its judgment is correct for any reason. *Southern Farm Bureau Casualty Ins. Co.* v. *Reed*, 231 Ark. 759, 332 S. W. 2d 615; *Reamey* v. *Watt*, 240 Ark. 893, 403 S. W. 2d 102.

There is no doubt that a bailee's responsibility may be increased and his liability enlarged by the terms of the contract with the bailor. *Scott-Mayer Comm. Co.* v. *Merchants' Grocer Co.*, 147 Ark. 58, 226 S. W. 1060.

Nor can there be any doubt that the majority rule is that an express agreement by bailee to return the bailed property imposes no greater liability upon the bailee than is implied in every bailment. See 8 Am. Jur. 2d 1034, Bailments. § 139; Annot., 150 ALR 271 and cases cited therein. Yet, this court has held that one who hired a slave upon a written contract that, in addition to providing for payment for the slave's service, required his return at the end of the year, was liable for failure to return him because of the slave's escape without fault of the hirer. *Alston* v. *Balls*, 12 Ark. 664. In that case it was held that the words in the contract constituted an unqualified covenant to return the slave and that it was to be presumed that the parties would have made no covenant on the subject if there had not been an intention to bind the hirer beyond his mere legal liability. *Alston* v. *Balls, supra.*

Although there are holdings to the contrary,[1] the

[1] See 150 ALR 280, et seq.; *Industron Corp.* v. *Waltham Door & Window Co., Inc.* 346 Mass. 18, 190 N. E. 2d 211 (1963), as well as the *Perreault* case later cited in this opinion.

great weight of authority supports the rule that an express obligation to return bailed property in good condition does not enlarge the common law liability of a bailee, in the absence of specific terms requiring the bailee to pay for the property in case of non-delivery or imposing some additional obligation relating to the care and maintenance of the property. See 8 Am. Jur. 2d 1034, Bailments, § 139; Annot., 150 ALR 278, et seq.; *Perreault* v. *Circle Club, Inc.,* 326 Mass. 458, 95 N. E. 2d 204 (1950); *First National City Bank* v. *Frederics-Helton Trav. Serv.,* 209 NYS 2d 704 (1961), 29 Misc. 2d 1041; *Edward Hines Lumber Co.* v. *Purvine Logging Co.,* 240 Ore. 60, 399 P. 2d 893 (1965). Yet, we cannot consistently apply one rule to a clause simply stating a requirement for return of the property and another to a clause stating a requirement for its return in good condition. It is a general rule of construction of a contract that we must not regard any language therein as surplusage, unless the clear intention of the parties requires us to do so, if any reasonable purpose thereof can be gathered from the entire instrument. *Fowler* v. *Unionaid Life Ins. Co.,* 180 Ark. 140, 20 S. W. 2d 611; *Bailey* v. *Whorton,* 207 Ark. 849, 183 S. W. 2d 52. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. *American Ins. Union* v. *Rowland,* 177 Ark. 875, 8 S. W. 2d 452; *Fowler* v. *Unionaid Life Ins. Co., supra.*

If we did not apply the rationale of the opinion in the *Alston* case, we would have to treat the words in the lease requiring the surrender of the truck at the termination of the lease in good condition as surplusage. In so doing, we would disregard our own well established rules governing construction of contracts set out in that case and in others cited above. Being unwilling to do so, we hold that this clause in the contract created a liability on the part of appellant for failure to return the truck in good condition.

The judgment is affirmed.