Bob FRANCE d/b/a BOB FRANCE TRAILER PARK
*v.* George O. NELSON d/b/a E-Z TV

86-248                                     729 S.W.2d 161

Supreme Court of Arkansas
Opinion delivered May 18, 1987
[Rehearing denied June 22, 1987.]

*Jeff Duty*, for appellant.

*Matthews, Campbell & Rhoads, P.A.*, by: *Craig A. Campbell*, for appellee.

DARRELL HICKMAN, Justice. This is a replevin and conversion case which was transferred to us by the court of appeals.

Bob France, the appellant, owns a trailer park in Rogers, Arkansas. The appellee, George Nelson, rents appliances, televisions, and stereos. Nelson rented a washer and dryer, a television set, and a stereo system by the week to Danny and Lena Adams. The Adamses rented a mobile home in France's mobile home park. When the Adamses failed to pay the weekly rent on the appliances, Nelson tried to recover the rented items. The Adamses had vacated the premises, and France refused to release the items until the rent due him by the Adamses was paid. Ultimately, Nelson filed a replevin suit to obtain the items. He also sued France for conversion, asking for damages.

The circuit judge signed a replevin order before trial, and the items were taken from the trailer park by court order and delivered to Nelson. All of the items were returned except the television set, which was not there. (Apparently, the Adamses took it.) Sitting as a jury, the trial judge found that France had no lawful right to keep possession of the property, and he awarded Nelson compensatory damages in the amount of $510. This amount is equal to the weekly rental Nelson charged for the items, $30 for the 17 weeks France converted the property. Punitive damages in the sum of $200 were also awarded.

France makes three arguments on appeal. First, the judgment was contrary to the law and evidence; second, punitive damages were not justified; and third, the court applied the wrong measure of damages. We do not agree and affirm.

The last argument can be easily disposed of. Both parties argue the law of damages relating to a replevin action, quoting extensively from *White* v. *Gladden*, 6 Ark. App. 299, 641

S.W.2d 738 (1982). In that case the court split three to three on this issue of damages. (See Note, *White* v. *Gladden: A Change in Law of Damages or a Change in Evidentiary Burden?*, 37 Ark. L. Rev. 718 [1983]). We declined to review that decision on a petition for writ of certiorari. An affirmance by an equally divided court is not entitled to precedential weight. *Arkansas Writers' Project, Inc.* v. *Ragland*, No. 85-1370, slip op. at 11 n.7 (U.S. April 22, 1987); *Neil* v. *Biggers*, 409 U.S. 188 (1972).

■■ Both parties miss the point entirely. The trial judge did not award incidental damages for a *replevin* judgment pursuant to Ark. Stat. Ann. § 34-2116 (Repl. 1962). He awarded damages for the *conversion* of the property. A replevin action is to recover property. Conversion is a common law tort action for the wrongful possession or disposition of another's property. See 18 Am. Jur. 2d, Conversion, §§ 1-6 (1985). They are separate causes of action. The measure of damages in a conversion action is different from that in a replevin suit. See *First Nat'l Bank of Brinkley, Ark.* v. *Frey*, 282 Ark. 339, 668 S.W.2d 533 (1984). The complaint asking for replevin also specifically alleged conversion and sought damages for that wrong. In his order, the judge found "[t]hat the Plaintiff is hereby awarded . . . compensatory damages for the conversion . . ." and ". . . hereby awarded punitive damages . . . in the sum of Two Hundred Dollars." No objection was made below to the claim for conversion, and the argument on appeal does not address what the judge found. Since it does not deal with the finding and judgment, we do not address it. Cf. *Garst* v. *Cullum*, 291 Ark. 512, 726 S.W.2d 271 (1987).

■■ The remaining arguments are simply disagreements over the facts. The trial judge summarized his finding from the bench:

> . . . [T]he *perception I have from hearing everybody is Mr. France made it clear Mr. France took the position he had the right to hold on to that property until his rent was paid. That position in my opinion is wrong. He didn't have the right to hold on to somebody else's property until the rent was paid.* I think he left Mr. Webb clearly with that idea that there wasn't anymore use to do anything else because he was going to hold it until the rent was paid. Mr.

> Webb didn't have any way of getting the rent paid and had no duty to pay the rent, nor did Mr. Nelson. It seems to me Mr. France got mistreated by Mr. Adams because Mr. Adams didn't pay his rent, but that's not a good reason for Mr. France to then mistreat Mr. Nelson or the rental business. I think there is a conversion here . . . (Italics supplied.)

The appellant disagrees with those findings, essentially rearguing his case to us. On appeal we view the evidence in a light most favorable to the appellee, and all inferences are resolved in favor of the appellee. *Sipes* v. *Munro*, 287 Ark. 244, 697 S.W.2d 905 (1985). The findings of the trial judge are affirmed unless we find them clearly wrong. *Sipes* v. *Munro, supra.*

The appellant's testimony was that he had a right to hold the property until his rent was paid, and Nelson never showed him any evidence of ownership until the sheriff came out. (No legal justification was given below or argued on appeal as to why the appellant had a right to hold the property.) The trial judge did not accept the appellant's version of what happened, because he began his summary by saying "[n]ow I certainly wouldn't say Mr. France is not telling me the truth when he says he told Mr. Webb he wanted to know who owned it . . ."

The testimony offered by the appellee was in a different vein. Nelson called the trailer park two or three times about his property. He was told "you cannot have those until someone pays the rent . . ." He got a refusal each time he called. Nelson sent his employee, Lester Webb, to get the property. He made three trips on his own to the trailer court. On the first trip, he left a note for France to call him. To his knowledge, no one ever did. A week later he returned and spoke to Mrs. France. She said her husband had the keys to the trailer. He asked if she would let him know when he could come out. Again, no word from the appellant. He returned the third time and finally talked to France. France told him someone had to pay the trailer rent before he would let the items go. A replevin suit was filed. A deputy sheriff made three trips to the trailer court. Finally, France was there to reluctantly open the trailer. France took the papers and found the serial numbers of the items a few digits off and refused to deliver the items. The deputy called his sergeant and was told to arrest

France if he refused to deliver the items. Finally, France saw the items were marked "E-Z TV Rental" in ink and released them to the deputy.

Disputed facts and the credibility of witnesses are within the province of the factfinder to resolve—not ours. *Merriman* v. *Yutterman*, 291 Ark. 207, 723 S.W.2d 823 (1987). We cannot say that the trial judge was clearly wrong in finding France wrongly refused to return the items to Nelson and converted them to his own use. No doubt, France's obstinance was a basis for the small award for punitive damages, as well as the repeated good faith efforts of the owner to get his goods without success. Nelson was wrongfully deprived of his property for four months. There is the fact that France changed the lock on the trailer and refused to comply with the sheriff's order, at least until threatened with arrest. The trial judge was entitled to conclude that France wrongfully and willfully deprived the owner of his property.

The appellant has failed to demonstrate any error that would warrant setting aside this judgment.

Affirmed.

PURTLE and NEWBERN, JJ., concur.

DAVID NEWBERN, Justice, concurring. The trial court, as the majority opinion notes, ordered the return of the property to the appellee and then awarded incidental damages based on the loss of use of the items replevied. However, the court stated in its order that it was awarding damages for "conversion." The majority opinion has seized on that mistaken terminology to duck the issue of whether the damages were correctly calculated.

I see nothing wrong with the trial court's calculation of damages. The appellant's argument is that no evidence of the *value* of the replevied items was presented. Therefore, he says, the court had no basis for determining whether the compensatory damages awarded for loss of use were disproportionate to the market value of the items.

In my opinion, if the appellant had wished to challenge the appellee's evidence of rental rates under the Adams contract as a basis for damages, he could have done so by presentation of

evidence of the value of the items. However, he did not.

My primary objection to the majority opinion is that it leaves the impression that this court fails to understand that conversion damages and incidental damages accompanying replevin are wholly inconsistent remedies. The distinguishing feature of an action for *conversion* is an interference with property so serious as to justify a forced judicial sale to the wrongdoer. *See* W. Prosser and W. Keeton, *Law of Torts*, § 15 (5th Ed. 1984). The property owner is compensated by an award for value of the property at the time and place of the conversion.

On the other hand, the primary object of a replevin action is the actual *recovery of possession* of the property. The owner cannot be required to accept the value of the item in lieu of return of possession. *Pettit* v. *Kilby*, 232 Ark. 993, 342 S.W.2d 93 (1961). By statute, the property owner may, in addition to return of the item, recover damages for loss of use while it was out of his possession. Ark. Stat. Ann. § 34-2116 (Repl. 1962).

It is generally recognized that the *value of the use* of the property converted is not recoverable in a conversion action. *Ford Motor Credit Co.* v. *Henry*, 267 Ark. 201, 584 S.W.2d 584 (1979) (measure of damages for conversion is the market value at the time and place of conversion, not the purchase, rental, or replacement cost); *Hardin* v. *Marshall*, 176 Ark. 977, 5 S.W.2d 325 (1928) (instruction allowing jury to assess as damages rental value of property converted in addition to value of property was error in a conversion cause of action).

Rather than emphasize the trial court's mistaken reference to conversion, I believe we can and should ignore the form of his order and look to its substance. The compensatory damage awards were so clearly the ones contemplated by Ark. Stat. Ann. § 34-2116 (Repl. 1962) that the court's ruling should be treated as such.

My second objection is that the majority opinion suggests we are somehow bound by the United States Supreme Court's estimate of the precedential value of appellate decisions which result from a tie vote. This court is not bound by the way the federal courts choose to handle this situation. The question of what weight to accord decisions from an equally divided court has

not been directly addressed in Arkansas, and the issue is far from settled. *See* R. Laurence, *A Very Short Article on the Precedential Value of the Opinions from an Equally Divided Court*, 37 Ark. L. Rev. 418 (1983).

While *White* v. *Gladden*, 6 Ark. App. 299, 641 S.W.2d 738 (1982), is in my view, no more than a tempest in a teapot in the context of this case, I do not believe we should imply that it lacks precedential value in our court of appeals.

While there is a temptation to remand this case to the trial court because of the mistaken terminology used in the judgment, I believe the judgment is clear enough in stating the damages and the means used to calculate them as incidental replevin damages that the judgment should be affirmed.

PURTLE, J., joins in this concurrence.